UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| LINDA HOFFMAN-KEITH,         ) | |
|                              ) | |
|     Plaintiff,               ) | |
|                              ) | |
|         v.                   ) | Case No. 2:22-cv-200 |
|                              ) | |
| JAY W. WISNER, DEBORAH M.    ) | |
| VLAM, KATHERINE A. REESE,    ) | |
| and PETER W. WISNER,         ) | |
|                              ) | |
|     Defendants.              ) | |

**OPINION AND ORDER**

Plaintiff Linda Hoffman-Keith brings this diversity action claiming Defendants Jay Wisner, Deborah Vlam, Katherine Reese, and Peter Wisner are responsible for injuries she suffered when she fell down a set of stairs.  Defendants now move for summary judgment, arguing that Plaintiff has no evidence of causation because she does not remember why she fell.  Plaintiff contends that even though she does not know what caused the fall, code-compliant railings on the stairway would have arrested or slowed her fall and Defendants may be liable for their failure to provide such railings.  For the reasons set forth below, the motion for summary judgment is denied.

**Factual Background**

During the relevant time period, Defendants were the owners of a lakeside house in Ferrisburgh, Vermont.  The house was built in approximately 1924 and has been owned by members of

Defendants' family for generations. Defendants have been renting the house to vacationers since they became the owners in or around 1983. Plaintiff has been renting the house since 1989. From 1990 through the date of the accident in July 2020, she rented from Defendants annually during last two weeks of July for herself, her children, and eventually her grandchildren.

At the time of the accident, the house had an interior set of stairs between the first floor living room and the second floor. The second floor had three bedrooms. The construction and dimensions of the stairs had not changed since the house was built. There were no handrails at the very top of the stairs. *See* ECF No. 65-5 at 6 (photograph of the top of the stairs). There was also no railing on the left side of the stairs going down. A railing was attached to the wall on the other side of the stairs.

Plaintiff testified in her deposition that she was aware the stairs were dangerous. Prior to her own accident, her daughter had an issue with the "trap door" at the top of the stairs, and her grandson had fallen down the stairs. At each annual visit to the house, Plaintiff would gather the children to talk about how to go up and down the stairs. She was specifically concerned about the risk of either falling down the stairs or falling through the opening on the side that had no

2

railing.  Family members were told to hold the single railing while using the stairs, and children were warned that if they played near the stairs they would not be allowed to go fishing.

Defendants note that at the time of Plaintiff's fall, the only bathroom in the house was on the first floor.  The first floor also had a futon available for sleeping.  Despite her concern about the stairs, Plaintiff never considered sleeping on the first floor.  She testified at her deposition that she felt comfortable using the stairs, and that they could be used safely if she was careful.

At the time of her fall in July 2020, Plaintiff was suffering from pain in her right knee due to bone-on-bone osteoarthritis and a meniscus tear.  She had a brace for her knee but testified that she did not need it.  She also suffered from occasional dizziness at home, neuropathy in her hands and feet, and a rotator cuff tear in her shoulder.

On the morning of her fall, Plaintiff woke up around 6:00 a.m. and spoke with her boyfriend on the phone.  She then got out of bed to go downstairs.  She did not need to turn on the hallway light because there was sufficient sunlight.  She approached and fell down the stairs, but does not know how she came to take a fall.  Nor does she know whether she stepped down onto any of the stairs.  She testified recalling that she "went backwards and my, my back hit the top stair around the T4,

3

crushing it; and the violence of it pushed me forward and I bounced off that top stair" resulting in a "somersault roll out into the living room." ECF No. 72-1 at 3, 153:16-21. Her grandson witnessed her fall into the living room.

Plaintiff submits that rental of the house qualified it as a public building under Vermont law, and as such it was required to comply with certain safety codes. A professional engineer retained by Plaintiff reportedly concluded that the lack of a handrail on one side of the stairs, and the lack of any handrail at the top of the stairs, violated safety code requirements. Although Plaintiff does not recall what caused her to fall, she attests that she did reach out to catch herself. She believes that if there had been a railing it would have arrested or slowed her fall, and that Defendants are liable for negligence.

## Discussion

Defendants have filed a motion for summary judgment. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

4

U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, a court is required to "resolv[e] all record ambiguities and draw[ ] all factual inferences in favor of the non-moving party." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 145 (2d Cir. 2007).

A party cannot overcome summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts" because "conclusory allegations or denials" cannot "create" genuine disputes of material fact "where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quotation marks omitted). Nor can a party opposing summary judgment "rest on the allegations or denials of his pleading." *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255; *accord Williams v. N.Y.C. Housing Auth.*, 61 F.4th 55, 76 (2d Cir. 2023). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir. 1992) (citing *H.L. Hayden Co. v. Siemens Med. Sys. Inc.*, 879 F.2d 1005, 1011 (2d Cir. 1989)).

In this case, Defendants argue that there are no questions of material fact in dispute because Plaintiff cannot identify

5

the cause of her fall. They claim that without knowing the cause of the fall, Plaintiff cannot argue that the lack of a railing was either a proximate cause, or the "but for" cause, of her injuries. Plaintiff submits that even without knowing the cause of the fall, she reached out for a railing and none was there. Accordingly, while the cause of the fall is unknown, she argues that the lack of a railing raises a question of fact as to whether her injuries could have been prevented.

For purposes of summary judgment, Defendants accept Plaintiff's assertion that the absence of a railing constituted a code violation. The code violation itself creates a rebuttable presumption of negligence. *Dalmer v. State*, 174 Vt. 157, 164 (2002) ("[p]roof of violation of a safety statute or regulation creates a *prima facie* case of negligence"). That presumption "shifts the burden of production to the party against whom the presumption operates." *Bacon v. Lascelles*, 165 Vt. 214, 222 (1996). To rebut the presumption, a defendant may show that he or she acted as a reasonably prudent homeowner under the circumstances. *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 33.

Even if "the defendant presents no evidence supporting the reasonableness of its actions," however, "a facial claim of negligence also requires injury and causation, and neither of these elements is established by proof of a violation of a

safety statute." *Id.* at ¶ 34. The Vermont Supreme Court has "acknowledged that the rule treats violations of safety statutes and regulations as evidence of negligence and puts the safety statute or regulation before the jury whenever it could find the statute or regulation has been violated and the violation could be found to be a proximate cause of the harm." *Id.* (cleaned up); *see also Collins v. Thomas*, 2007 VT 92, ¶¶ 7-9 (finding that although the defendant committed a statutory violation by driving a vehicle without a valid inspection sticker, the violation was not the proximate cause of plaintiff's injuries). Consequently, the fact of the code violation, standing alone, does not render Defendants liable for negligence. *See Lash v. J. J. Newberry Co.*, 510 F.2d 429, 434 (2d Cir. 1975) (holding that, under Vermont law, a statutory violation moves the burden of production to the defendant, while "the burden of proving proximate cause remains with the plaintiff").

Defendants argue that the alleged code violation is meaningless, since Plaintiff could have fallen down the stairs even if they had been up to code. This argument does not take into account Plaintiff's contention that she reached out to catch herself, and that the presence of a code-compliant railing would have helped her avoid falling. With respect to her burden of showing probable cause, Plaintiff contends that "but for" Defendants' negligent failure to provide a code-compliant

railing, she would have been able to stop, or at least slow, her fall.  ECF No. 65-6 at 1.

The Vermont Supreme Court has held that proximate cause is ordinarily "a jury issue," and may only be decided as a matter of law if "the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way."  *Collins*, 2007 VT 92, ¶ 8 (citation omitted).  Here, the Court finds that the question of proximate cause is not so clear that all reasonable jurors would find for the Defendants.  The cited code required a railing, and there was none.  Plaintiff says that the presence of a railing would have prevented or slowed her fall.  Her allegation therefore presents the railing as a proximate cause of the injury.  *See id.* (quoting *Beatty v. Dunn*, 103 Vt. 340, 343 (1931) ("liability attaches for injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own.")).

The Court has considered the case law submitted by Defendants and finds those cases to be unpersuasive, not controlling, or both.  Some of the cited cases held that a negligence claim cannot be presented to a jury when the cause of the fall is unknown.  Here, however, Plaintiff concedes that she does not know why or how she fell, but that a proper railing

8

would have helped her avoid injury.  The focus, therefore, is the role of the railing and not the initial cause of the fall.

Defendants rely in part on *Blankenship v. Bernick*, 2017 Ill. App. 1st 161364-U, an unpublished, non-precedential order issued by an Illinois appellate court.  Assessing facts similar to those presented here, the *Blankenship* court found that while "a trier o[f] fact could infer that after plaintiff lost her balance, she could have grabbed the handrail to regain her balance, . . . a trier of fact cannot be permitted to make that inference. . . .  What plaintiff could or might have done in regard to her fall and a handrail is not a disputed material fact, is [sic] merely an answer to a hypothetical question." *Id.* ¶¶ 14, 17.

The Court disagrees with the *Blankenship* analysis.  Here, Plaintiff attests that if there had been a handrail she would have used it to arrest or slow her fall.  Her certainty goes beyond "mere speculation or conjecture," and creates a question for the jury as to whether the presence of a code-compliant handrail would have made a difference.  *Hicks*, 593 F.3d at 166.  The Court cannot decide that question as a matter of law.  Defendants' motion for summary judgment is therefore denied.

## Conclusion

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 60) is denied.  Plaintiff's motion for

leave to file a sur-reply and to supplement the record (ECF No. 73) is also denied.

DATED at Burlington, in the District of Vermont, this 20th day of May, 2025.

/s/ William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge